DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Williams County Court of Common Pleas, Juvenile Division, finding appellant, Jessica C, a delinquent child by committing acts which, if committed by an adult, would constitute assault on a corrections officer in violation of R.C.2903.13(A) and (C)(2)(b), a felony in the fifth degree. The charge relates to an altercation with a corrections officer on November 7, *Page 2 
2006, at the Northwest Ohio Juvenile Detention, Training and Rehabilitation Center in Stryker, Ohio. At the time, appellant was held at the facility pending disposition on a different delinquency charge.
 {¶ 2} Appellant was age 13 at the time of the altercation and during the course of juvenile court proceedings against her. Her mother attended all court proceedings with her. Appellant was also represented by counsel.
 {¶ 3} The trial court placed appellant at a specialized treatment facility, Pomegranate Health Systems ("Pomegranate"), two months before trial due to serious behavioral and mental difficulties. The record includes evidence of prior suicide attempts, history of self-mutilation, and behavioral problems. The record does not include any medical records or reports on whether appellant was competent to stand trial. During the course of proceedings, the trial court displayed an intimate knowledge of appellant's history, condition and treatment needs.
 {¶ 4} The case proceeded to trial on January 12, 2007. Three corrections officers and appellant testified. There were no other trial witnesses.
 {¶ 5} A key factual component of the charges against her was testimony that appellant choked a corrections officer while at the detention center. Officer Julie Ledyard testified that she heard appellant screaming and went to her cell. Ledyard stated that she observed appellant with a blanket tied around her neck. Ledyard radioed for help. Ledyard described efforts by her to remove the blanket and to restrain appellant *Page 3 
from injuring herself. She testified that appellant became combative, struggled with her, and choked her.
 {¶ 6} Corrections Officer James Metcalf testified that he went to appellant's cell from the control room as events transpired. According to Metcalf, when he arrived at the cell appellant had "Officer Ledyard up against the wall with her hand around her throat and um, at that time I stepped in and, and ah pulled my OC spray, put it near detainee's * * * [appellant's] * * * face and I told her to release the officer and she did."
 {¶ 7} Appellant testified on her own behalf[1] She denied that she grabbed officer Ledyard's throat. She admitted reaching her hand up to Officer Ledyard's throat but testified that she stopped herself before touching Ledyard.
 {¶ 8} Trial concluded on the morning of January 12, 2007. The trial court found appellant delinquent on the offense of assaulting a corrections officer. There were no outbursts from appellant of any kind during arraignment, trial, or dispositional hearings after trial.
 {¶ 9} After trial, the court reconvened proceedings, after a short break, to consider disposition. The probation officer gave a pre-disposition report and recommended that the court consider further attempts at treatment of appellant at Pomegranate before committing her to the Ohio Department of Youth Services ("ODYS"). The trial court engaged appellant in a lengthy conversation concerning an opportunity for further treatment at Pomegranate and the court's uncertainty as to whether *Page 4 
she would respond appropriately if returned to Pomegranate. The court noted at the hearing that while appellant's behavior at Pomegranate was not appropriate, it, nevertheless, showed improvement from her prior behavior while held at the detention center.
 {¶ 10} Appellant stated a desire for treatment at Pomegranate and that she would try her "hardest" at treatment. She stated "I deserve to get treated" and that the best way to achieve the goal was to "[g]o back to Pomegranate." She stated: "I will do better if I know I'm not going to DYS." The court questioned whether it could believe appellant's assurances. Appellant's mother thanked the court for its efforts at the hearing. The court deferred final disposition to ODYS pending additional treatment of appellant at Pomegranate.
 {¶ 11} Ultimately, at a hearing on February 21, 2007, the trial court determined that treatment at Pomegranate had proved unsuccessful. Appellant's mother contended, on appellant's behalf at the hearing, that Pomegranate had recently changed psychotropic medication and that additional time was necessary for the medication to take full effect. The court ordered appellant committed to ODYS with requests for additional psychiatric care and further evaluation of appellant's medications at ODYS. The commitment order provided for a minimum six month commitment to a maximum commitment until appellant reaches age twenty-one. Appellant filed this appeal.
 {¶ 12} Appellant asserts three assignments of error on appeal:
 {¶ 13} "Assignment of Error I *Page 5 
 {¶ 14} "The juvenile court was aware that Jessica C. has severe behavior and mental health issues, which led her to spread feces on walls and act sexually inappropriately such that Pomegranate Health Systems could not treat her. Notwithstanding this, the court failed to hold a competency hearing to ensure that Jessica understood the nature of the proceedings and could assist in her own defense. Did the juvenile court violate Jessica's fundamental right not to be tried while incompetent?
 {¶ 15} "Assignment of Error II
 {¶ 16} "The juvenile court did not appoint defense counsel to take on the dual role of Jessica's attorney and guardian ad litem. But during the dispositional phase of the hearing, the court indicated that it wanted defense counsel to advocate for Jessica's best interests, not her expressed wishes. Instead of appointing a guardian ad litem to investigate Jessica's situation and to offer the most appropriate placement for Jessica, the court committed her to the Department of Youth Services. Did the court err when it failed to appoint a guardian ad litem to ensure that Jessica's best interests were protected?
 {¶ 17} "Assignment of Error III
 {¶ 18} "A juvenile court has a duty to hold a competency hearing if the issue is properly raised before trial. Despite an abundance of evidence surrounding Jessica's competence, defense counsel did not move the court to hold a competency hearing. An incompetent defendant can never be adjudicated delinquent. Was Jessica's counsel ineffective because he failed to raise Jessica's incompetence before trial?" *Page 6 
 {¶ 19} The first and third assignments of error both concern appellant's competency to stand trial. We will address them together.
 Competency to Stand Trial {¶ 20} It is a fundamental principle of due process of law that a criminal defendant who is not legally competent shall not be subjected to trial. Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815; State v. Berry (1995), 72 Ohio St.3d 354, 359,1995-Ohio-310. In State v. Berry, the Supreme Court of Ohio identified the test to determine when a defendant is not competent to stand trial:
 {¶ 21} "In Dusky v. United States (1960), 362 U.S. 402, 80 S.Ct. 788,789, 4 L.Ed.2d 824, 825, the United States Supreme Court set forth the test to determine whether a defendant is competent to stand trial, stating that "* * * the `test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'" Berry at 359.
 {¶ 22} Under R.C. 2945.37(B) the issue may be raised by the court, prosecutor, or defense. Under the statute, a hearing is required where objections as to competency are raised prior to trial. Id. If the issue is raised during trial, RC. 2945.37(B) requires a hearing "only for good cause shown." Id. "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains `sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." State v. Berry, (1995), *Page 7 72 Ohio St.3d 354, 359, 1995-Ohio-310 quoting Drope v. Missouri (1975),420 U.S. 162, 175, 95 S.Ct. 896, 905, 43 L.Ed.2d 103, 115.
 {¶ 23} Here, no one raised the issue of the competency of Jessica C. to stand trial either before or during trial. Appellant contends that the issue should have been considered by the court "sua sponte," that is, that the trial court should have raised the issue on its own and conducted a competency hearing.
 {¶ 24} In State v. Rubenstein (1987), 40 Ohio App.3d 57 the Eighth District Court of Appeals outlined matters to be considered in determining whether a court, sua sponte, should order a hearing on the defendant's competency to stand trial:
 {¶ 25} "A trial court, in making a determination of whether to hold a sua sponte hearing concerning the accused's competence to stand trial, should consider the following: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." State v. Rubenstein at paragraph two of the syllabus.
 {¶ 26} Trial counsel did not raise the issue of competency. He worked closely with appellant in defense of the case. Appellant testified and was subject to cross-examination at trial. She withstood cross-examination to maintain her testimony that she had reached towards the corrections officer's neck, but had not choked her. She admitted that her hand came close to the officer's neck. On cross-examination she even testified that she had stopped short of choking the officer after considering likely repercussions. *Page 8 
 {¶ 27} The adjudicatory hearing was followed by a short dispositional hearing later on the same day. Appellant demonstrated knowledge of the proceedings and engaged in a dialogue with the court to assure she remained at a treatment center for further treatment rather than face immediate commitment to ODYS. Appellant's demeanor at trial was appropriate — there were no outbursts.
 {¶ 28} There were no expert reports or testimony evaluating appellant's competency to stand trial. Appellant has argued that evidence of her history of behavioral and mental difficulties constituted indicia of incompetency requiring a competency hearing. Despite her behavioral and mental difficulties, however, appellant played an active and knowledgeable role in her defense. Furthermore, the Supreme Court of Ohio has recognized a distinction exists between being mentally or emotionally ill and not being competent to stand trial. "[A] defendant may be emotionally disturbed or even mentally ill and yet competent to stand trial." State v. Ferguson, 108 Ohio St.3d 451,2006-Ohio-1502, ¶ 46, quoting State v. Mink, 101 Ohio St.3d 350,2004-Ohio 1580, ¶ 38. Stated differently, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and assisting his counsel."State v. Bock (1986), 28 Ohio St.3d 108, 110.
 {¶ 29} The distinction has been incorporated into R.C. 2945.37(F):
 {¶ 30} "(F) The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. or a voluntary or involuntary mentally retarded *Page 9 
resident under Chapter 5123. of the Revised Code or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication."
 {¶ 31} Upon review of the record, we conclude that appellant's testimony and conduct at trial demonstrates that she understood the nature of the proceedings against her and that she was capable of assisting counsel in her own defense. Neither appellant's testimony nor her behavior at trial provided "good cause" or "sufficient indicia of incompetence" to require a hearing on her competency.
 {¶ 32} In State v. Bock (1986), 28 Ohio St.3d 108 the Supreme Court of Ohio considered the effect of the active participation of the defendant in defense of the case on claims that the defendant was incompetent to stand trial. Unlike this case, in Bock the issue of incompetency had been raised prior to trial, but the trial court failed to conduct a hearing as required under R.C. 2945.37. The Supreme Court of Ohio held that without sufficient indicia of incompetency in the record, the failure to conduct a hearing was harmless error:
 {¶ 33} "The failure to hold a competency hearing is harmless error where the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination, and the record fails to reveal sufficient indicia of incompetency. (Pate v.Robinson [1966], 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 andDrope v. Missouri [1975], 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103, construed and followed.)" State v. Bock at paragraph one of syllabus. *Page 10 
 {¶ 34} The trial court did not err when it failed to order a competency hearing, sua sponte, as to whether appellant was competent to stand trial. We find that Assignment of Error No. I is not well-taken.
 {¶ 35} In Assignment of Error No. III, appellant argues that her trial counsel was ineffective due to his failure to assert that she was not competent to stand trial. We disagree. To establish ineffective assistance of counsel, a criminal defendant must prove two elements:
 {¶ 36} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064.
 {¶ 37} Prejudice under Strickland v. Washington requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S.Ct. at 2068.
 {¶ 38} Additionally, in considering a claim of ineffective assistance of counsel, a court must be "highly deferential" to trial counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 689,104 S.Ct. at 2065. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. State v.Hamblin (1988), *Page 11 37 Ohio St.3d 153, 155-56, sentence reversed on other grounds, Hamblin v.Mitchell (C.A.6, 2003), 354 F.2d 482.
 {¶ 39} After a review of the record and allowing for proper deference to trial counsel, we conclude that evidence is lacking to support a claim that trial counsel was deficient in failing to assert that appellant was incompetent to stand trial. Appellant's demeanor and testimony at trial and active involvement in both the adjudicatory and dispositional phases of the case demonstrate a lack of indicia of incompetency sufficient to require trial counsel to object to incompetency either before or during trial. We find Assignment of Error No. III is not well-taken.
 Failure to Appoint Guardian ad Litem {¶ 40} Appellant argues in her second assignment of error that the trial court erred in failing to appoint a guardian ad litem for appellant due to a claimed conflict of interest with trial counsel. Appellant claims appointment of a guardian ad litem was required under Juv.R. 4(B)(8). This assertion is made despite the fact that there was no motion to appoint a guardian ad litem in the trial court and the fact that appellant's mother attended all proceedings with her. Juv.R.(B)(8) provides:
 {¶ 41} "(B) Guardian ad litem; when appointed
 {¶ 42} "The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
 {¶ 43} "* * * *Page 12 
 {¶ 44} "(8) Appointment is otherwise necessary to meet requirements of a fair hearing."
 {¶ 45} Appellant claims that she was "left without someone to represent her best interests during her adjudication and disposition hearings." The basis of the claim is the fact that trial counsel cannot act both as the trial attorney and guardian ad litem when the defendant's interests and her best interests are in conflict. Appellant claims a conflict in interest of trial counsel arose when he advocated that appellant should be returned to her mother's custody and receive outpatient treatment at home. Appellant contends that such an argument may have been urged by appellant to her attorney but that the proposal was clearly against her own best interests.
 {¶ 46} Trial counsel, however, was not asked to serve as both trial counsel and guardian ad litem. He was never appointed guardian ad litem and never acted as such. Furthermore, appellant's mother was present at all proceedings and available to act in appellant's best interests.
 {¶ 47} The state argues that appellant has failed to explain how a guardian ad litem was necessary to assure a fair trial in view of the fact that appellant was represented by counsel and her mother attended all proceedings including trial and dispositional hearings. We agree.
 {¶ 48} Both Juv.R. 4(B)(2) and R.C. 2151.281(2) require appointment of a guardian ad litem where a conflict of interest exists between the parent and child. E.g. In re William B., 163 Ohio App.3d 201,2005-Ohio-4428, ¶¶ 35-43; In re Sappington *Page 13 
(1997), 123 Ohio App.3d 448, 452. Appellant has not asserted that any evidence exists of such a conflict. A review of the record discloses none.
 {¶ 49} Both Juv.R. 4(B)(3) and R.C. 2151.281(C) require appointment of a guardian ad litem where the parent of a delinquent child "appears to be mentally incompetent." No one has contended that appellant's mother is incompetent.
 {¶ 50} The record demonstrates that appellant's mother was present at all proceedings, shared an interest with her daughter in her continued treatment at Pomegranate, and advocated it on her behalf. She thanked the court for its consideration of further treatment at Pomegranate at the original dispositional hearing. She argued on appellant's behalf at the second (prior to commitment to ODYS) that new a psychotropic medication had been initiated at Pomegranate and that additional time was necessary for the medication to take full effect before making a final decision on disposition.
 {¶ 51} An abuse of discretion standard applies to appellate review of a trial court's decision of whether to appoint a guardian ad litem. In re Spradlin (2000), 140 Ohio App.3d 402, 407. In our view the trial court did not commit any abuse of discretion by failing to appoint, sua sponte, a guardian ad litem for appellant. We find Assignment of No. II not well-taken.
 {¶ 52} On consideration whereof, the court finds that substantial justice has been done the party complaining, and that the judgment of the Williams County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in *Page 14 
preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J. CONCUR.
[1] Before appellant testified, the court and appellant discussed her right not to testify and to remain silent and the waiver of rights by testifying. *Page 1