JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, William Ellis (Ellis), appeals his conviction for gross sexual imposition, felonious assault, and kidnapping. After reviewing the parties' arguments and pertinent case law, we affirm.
 {¶ 2} On June 18, 2007, a Cuyahoga County Grand Jury indicted Ellis with the following: one count of rape, two counts of gross sexual imposition, two counts of felonious assault, and two counts of kidnapping with sexual motivation specifications attached.
 {¶ 3} The facts giving rise to the instant case occurred between Ellis and A.T.[1] on July 2, 2006. As a preliminary matter, however, the following facts were established at trial. Ellis and A.T. met for the first time through Ellis' cousin, Tonae Martin (Martin) on June 29, 2006. That evening, they went to a bar together. A.T. had recently moved in with Martin, who lived at 2440 East 35th Street, Cleveland, Ohio.
 {¶ 4} After the bar closed, the three returned to Martin's home. Martin went to sleep but was awakened by a loud noise. Martin opened the door to her son's room and found Ellis and A.T. on her son's bed watching television, Ellis was lying down and A.T. was sitting up. The bed had broken. Ellis was wearing *Page 4 
a shirt and was otherwise under the covers, and A.T. was wearing a bra and underwear.
 {¶ 5} Thereafter, on July 2, 2006, at approximately 11:00 a.m., Ellis, knowing that Martin would not be home, went back to Martin's to collect his audio compact discs (CDs). A.T. was home cleaning the second floor bathroom at the time. A.T. gave Ellis his CDs, but Ellis did not leave.
 {¶ 6} Ellis offered A.T. marijuana, which she declined. A.T. went downstairs, and Ellis followed. Ellis told A.T. that she looked good and that he wanted a kiss before he left. A.T. told Ellis that she did not want to kiss him and that she did not like him. Ellis tightly grabbed the drawstrings of A.T.'s pants and backed her into a corner. A.T. cut herself free of the drawstrings with a knife and attempted to get away. Ellis told her to take her clothes off and pulled A.T. towards him. Ellis forced her to sit on his lap and grabbed her by the throat, choking her. A.T. scratched and bit him in resistance. Ellis threatened her by saying "Do you know what I can do to you?" (Tr. 579.)
 {¶ 7} Ellis moved A.T. to a nearby couch, fondled her breasts, and touched her vagina. Ellis then put his penis in her vagina. A.T. tried to escape through a glass door, but Ellis pulled her back. A.T. eventually escaped and called Martin. Ellis left the house. Martin and Martin's mother returned to the home and took A.T. to the hospital. *Page 5 
 {¶ 8} On October 23, 2007, the case proceeded to a jury trial. During trial, Ellis motioned for acquittal pursuant to Crim. R. 29. The trial court granted the motion in part, dismissed one count of felonious assault, and reduced the other count of felonious assault to the lesser included offense of assault under R.C. 2903.13.
 {¶ 9} On October 29, 2007, the jury returned the following verdict: not guilty of rape; guilty of both counts of gross sexual imposition; guilty of assault; and lastly, guilty of both counts of kidnapping with sexual motivation specifications.
 {¶ 10} On November 26, 2007, the trial court conducted a House Bill 180 hearing and classified Ellis as a sexually oriented offender. Also on November 26, 2007, the trial court sentenced Ellis to five years of imprisonment as follows: eighteen months for each count of gross sexual imposition, to be served consecutively; five years for each count of kidnapping, merged for purposes of sentencing and to be served concurrent to the eighteen month sentence; and lastly, a six-month suspended sentence for assault.
 {¶ 11} Ellis appeals, asserting six assignments of error for our review.
 ASSIGNMENT OF ERROR NUMBER ONE
 "Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth
and Fourteenth Amendment to the United States Constitution when trial counsel failed to request a psychological assessment of Appellant prior to the Commencement of trial." *Page 6 
 {¶ 12} Ellis argues that he was denied effective assistance of counsel because counsel failed to request a psychological assessment prior to commencement of trial.
 {¶ 13} To establish a claim for ineffective assistance of counsel, Ellis must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. First, Ellis must prove that trial counsel's performance was deficient, namely, that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment; and second, that the deficient performance prejudiced the defense, depriving defendant of a fair trial.
 {¶ 14} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at paragraph 2(b) of syllabus.
 {¶ 15} In the case sub judice, Ellis did not request a psychological assessment until after the close of trial. Neither is there any evidence in the record that Ellis may have required a psychological assessment prior to trial. Ellis was present at trial without any indicia of incompetency. Further, although represented by counsel, Ellis acted pro se and filed certain motions on *Page 7 
his own behalf, evidence of Ellis' active involvement in the case. As the Sixth Appellate District held in a similar matter:
 "After a review of the record and allowing for proper deference to trial counsel, we conclude that evidence is lacking to support a claim that trial counsel was deficient in failing to assert that appellant was incompetent to stand trial. Appellant's demeanor * * * at trial and active involvement in both the adjudicatory and dispositional phases of the case demonstrate a lack of indicia of incompetency sufficient to require trial counsel to object to incompetency either before or during trial." In the Matter of: Jessica N. C, Williams App. No. WM-07-005, 2008-Ohio-249.
 {¶ 16} We find the same in the instant case.
 {¶ 17} Ellis' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
 "Appellant's convictions for gross sexual imposition, kidnapping and assault were against the manifest weight of the evidence."
 {¶ 18} Ellis argues that his conviction is against the manifest weight of the evidence.
 {¶ 19} The Ohio Supreme Court set forth the following standard for evaluating a claim that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. *Page 8 
 {¶ 20} Gross sexual imposition, as charged in both counts of the indictment, is set forth in R.C. 2907.05(A)(1) as follows:
 "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 21} "A defendant purposely compels a victim to submit by force or threat of force when the defendant uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit." State v. Schaim (1992), 65 Ohio St.3d 51. "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).
 {¶ 22} "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 23} Here, Ellis purposely compelled A.T. to submit by force when he tightly grabbed the drawstring of A.T.'s pants, backed her into a corner, and then forced A.T. to sit on his lap by choking her with his forearm, threatening her by stating "Do you know what I can do to you?" (Tr. 579.) *Page 9 
 {¶ 24} Ellis had sexual contact with A.T. when he touched A.T.'s breasts and also her vagina for the purpose of sexually arousing himself. "As used in R.C. 2907.05 and 2907.01(B), the term `sexual arousal or gratification' contemplates any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." State v. Astley (1987), 36 Ohio App.3d 247, at paragraph two of syllabus.
 {¶ 25} Assault, as set forth in R.C. 2903.13(A), reads: "No person shall knowingly cause or attempt to cause physical harm to another * * *."
 {¶ 26} A person acts knowingly, regardless of his purpose, "when he is aware that his conduct will probably cause a certain result * * *." R.C. 2901.22(B).
 {¶ 27} "`Physical harm to persons means' any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 28} Ellis was aware that his conduct would cause A.T. injury when he forced her down on his lap by choking her with his forearm. The medical records reveal that she had a resulting red mark on her neck, consistent with A.T.'s testimony of being choked.
 {¶ 29} Pursuant to R.C. 2905.01(A)(2), kidnapping is defined as:
 "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the *Page 10 
liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter * * *."
 {¶ 30} Pursuant to R.C. 2905.01(A)(4), kidnapping is defined as:
 "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will * * *."
 {¶ 31} Here, Ellis, used force by physically exerting constraint against A.T. when he backed her into a corner on the first floor and told her to take her clothes off. R.C. 2901.01(A)(1). Ellis continued to use force when he choked A.T. Both actions restrained A.T.'s liberty. A.T. could do nothing to stop Ellis because given the difference in size, she had no ability to physically resist him.
 {¶ 32} As already noted, Ellis engaged in sexual contact with A.T., which, by definition constitutes sexual activity for purposes of kidnapping. See R.C. 2907.01(C). Further, Ellis committed kidnapping in order to facilitate the commission of a felony, namely, gross sexual imposition.
 {¶ 33} Further, "`sexual motivation' means [a] purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J).
 {¶ 34} The Second Appellate District aptly noted regarding sexual motivation:
 "Whether that touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact. In other words, would an ordinary prudent person or a reasonable person sitting as a juror *Page 11 
perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire." State v. Mundy (1994), 99 Ohio App.3d 275.
 {¶ 35} Here, Ellis committed kidnapping in order to exert control over A.T., remove her clothes, and commit two counts of gross sexual imposition. Thus, we find that an ordinary prudent person, or a reasonable person sitting as a juror would perceive from Ellis' actions, and all surrounding facts and circumstances, that Ellis' specific intention was arousal or gratification of sexual desire.
 {¶ 36} Ellis' second assignment of error is overruled.
 {¶ 37} In the interest of judicial economy, we address Ellis' third, fourth and fifth assignments of error together.
 ASSIGNMENT OF ERROR NUMBER THREE
 "The retroactive application of Senate Bill 10 violates the ex post facto clause of the United States Constitution."
 ASSIGNMENT OF ERROR NUMBER FOUR
 "The retroactive application of Senate Bill 10 violates the retroactivity clause of the Ohio Constitution."
 ASSIGNMENT OF ERROR NUMBER FIVE
 "Senate Bill 10 violates the double jeopardy clause of the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 38} Ellis argues that application of Senate Bill 10 violates the ex post facto clause of the United States Constitution, the retroactivity clause of the Ohio Constitution, *Page 12 
and lastly, the double jeopardy clause of the Ohio Constitution.
 {¶ 39} The Sex Offender Registration and Notification Act (SORNA) is contained in the Adam Walsh Act and requires convicted sex offenders to register in the jurisdiction in which he or she resides. SORNA is incorporated into Ohio law. See R.C. 2950 et seq.
 {¶ 40} We have held, however, that "SORNA, as set forth in the Adam Walsh Act, does not violate * * * ex post facto protections." State v.Holloman-Cross, Cuyahoga App. No. 90351, 2008-Ohio-2189.
 {¶ 41} Nor does SORNA, as set forth in the Adam Walsh Act, violate the retroactivity clause of the Ohio Constitution. The Third, Fourth, Seventh and Ninth Appellate Districts have found that the Adam Walsh Act does not violate the retroactivity clause of the Ohio Constitution and we find the same. See In re Gant, 3rd Dist. No. 1-08-011,2008-Ohio-5198; State v. Byers, 7th Dist. No. 07 CO 39, 2008-Ohio-5051; State v. Honey, 9th Dist. No. 08CA0018-M,2008-Ohio-4943; State v. Longpre, 4th Dist. No. 08CA3017,2008-Ohio-3832.
 {¶ 42} Regarding the double jeopardy clause of the Ohio Constitution, we agree with the Third, Fourth and Seventh Appellate Districts that there is no violation. See Gant at _20-21; Byers at — 103; andLongpre at _15-16.
 {¶ 43} Ellis' third, fourth, and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR NUMBER SIX *Page 13 
 "The trial court erred in classifying Appellant as a sexually oriented offender under Ohio's Megan's Law after the provisions providing for such classification had been repealed."
 {¶ 44} Ellis argues that because Senate Bill 10 repealed Ohio's Megan's Law, the trial court erred in classifying him as a sexually oriented offender.
 {¶ 45} However, "all of the Ohio Revised Code portions repealed in Section 2 were repealed effective January 1, 2008, the same date that the new laws, as articulated in Section 1, became effective. The plain statutory language must control." In re Smith, 3rd Dist. No. 1-07-58, 2008-Ohio-3234. As such, Ellis' argument that there was no sexual offender registration law in effect when he was adjudicated a sexually oriented offender must fail.
 {¶ 46} Ellis' sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 14 
ANTHONY O. CALABRESE, JR., P.J., and PATRICIA A. BLACKMON, J., CONCUR KEY WORDS:
[1] Victims of sex-related offenses and juveniles are referred to herein by their initials in accordance with this court's established policy regarding non-disclosure of their identities. *Page 1