JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Michael Hartman appeals his convictions and his adjudication as a Tier II offender under the Ohio Adam Walsh Act. Hartman assigns the following errors for our review:
 "I. Appellant's conviction is legally insufficient to sustain verdicts of guilty of the offenses of importuning and compelling prostitution."
 "II. Appellant's conviction is against the manifest weight of the evidence."
 "III. Appellant's classification under the Adam Walsh Act must be reversed as said act is unconstitutional and specifically violates the Retroactivity Clause of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On August 31, 2006, the Cuyahoga County Grand Jury indicted Hartman on one count of importuning, two counts of compelling prostitution, and one count of public indecency. Before his trial, Hartman executed a jury waiver. Thereafter, the trial court conducted a competency hearing and found Hartman competent; the trial court afterwards proceeded to a bench trial.
 Bench Trial {¶ 4} At trial, the evidence presented, through the testimony of three witnesses, established that in the late evening of August 17, 2006, A.P. was in the *Page 4 
backyard of her home located in Cleveland, Ohio. At the time, A.P., [1]
who was then eight years old, was playing in a club house that she had built with the help of her cousins.
 {¶ 5} The evidence also established that Hartman, a fifty-year old neighbor, came into the backyard with carpeting for the clubhouse. A.P. knew Hartman by virtue of cutting and edging his lawn, as well as shoveling his snow. Hartman typically paid A.P. $10 to cut the lawn or to shovel his driveway.
 {¶ 6} At trial, A.P. testified that shortly after Hartman entered the clubhouse, and conversation ensued in which Hartman requested a lap dance in exchange for $40. Specifically, A.P. testified as follows:
 "Q. Well, what did he say?
 A. Well, when it was about the $40, he just said, my girlfriend can give me a lap dance for $40.
 Q. Okay. Did he ask you to give him a lap dance?
 A. Yes.
 Q. What did he say to you?
 A. He said, I'll give you $40 to do a lap dance.
 Q. What did you say?
 A. I said, no. My mom wouldn't allow me to do that. *Page 5 
 Q. Why wouldn't your mom let you do that?
 A. Because I'm young.
 Q. How did you feel when he asked you that question?
 A. I was shaking a little bit, like I'm doing now."[2]
 ***
 Q. What did you think a lap dance was?
 A. A girl on a guy's lap.
 Q. Doing what?
 A. I know what it is. I just don't want to say it.
 Q. You can say it. You can say it.
 A. Moving her body around.
 Q. Okay. And that's what Mike asked you to do?
 A. For 40 bucks to do a lap dance."[3]
 {¶ 7} A.P.'s mother testified that on the evening of August 17, 2006, she went into the backyard to retrieve some paper plates from the clubhouse. A.P.'s mother entered the clubhouse and observed Hartman sitting on the floor across from A.P. A.P.'s mother could see Hartman's exposed penis as he sat across from A.P. wearing very short gym shorts. *Page 6 
 {¶ 8} A.P.'s mother took A.P. inside their house and A.P. disclosed what had ensued and gave her mother the $40, which she had received from Hartman. A.P.'s mother immediately called the police and turned the $40 over to them when they arrived.
 {¶ 9} Detective Jim McPike, of the Cleveland Police Department's Sex Crimes Division investigated the case. As part of his investigation, Detective McPike questioned A.P. and her mother, as well as Hartman. Hartman did not deny giving A.P. the $40.
 {¶ 10} Detective McPike obtained a written statement from Hartman in which he claimed that the money was for work she was to do in the future. Hartman admitted to Detective McPike that he had talked to A.P. about dancing because his girlfriend is a dancer. Hartman admitted that it was possible that A.P. could see his exposed penis because of the way he had been sitting.
 {¶ 11} At the close of the trial, the trial court found Hartman guilty of importuning, one count of compelling prostitution and public indecency. On January 18, 2008, the trial court sentenced Hartman to four years of community control sanctions. The trial court also adjudicated Hartman a Tier II Offender under the Ohio Adam Walsh Act.
 Motion for Acquittal *Page 7 {¶ 12} In the first assigned error, Hartman argues that the trial court should
have granted his motion for acquittal because the evidence was insufficient to support his convictions. We disagree.
 {¶ 13} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[4]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[5]
 {¶ 14} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [6] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the *Page 8 evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 15} After reviewing the evidence in a light most favorable to the State, we find that the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of importuning and compelling prostitution.
 {¶ 16} R.C. 2907.07(A), regarding importuning, provides that "no person shall solicit a person who is less than 13 years of age to engage in sexual activity with the offender ***." Regarding compelling prostitution, R.C. 2907.21(A) provides that "no person shall knowingly *** encourage, solicit, request *** a minor to engage in sexual activity for hire ***."
 {¶ 17} Hartman contends that the State's evidence was insufficient to sustain his convictions because the alleged request for a lap dance fell short of the definition of sexual activity as defined in the Ohio Revised Code. We are not persuaded.
 {¶ 18} A.P. testified that Hartman requested that she give him a lap dance in exchange for $40. A.P. also testified that she knew what Hartman meant by a lap dance. A.P. specifically testified that a lap dance was a "girl on a guy's lap *** *Page 9 
moving her body around."[7] Detective McPike also testified about A.P.'s understanding of a lap dance, as follows:
 "*** She said it's when you sit on someone's lap and shake your butt, and that her two cousins are strippers, and that's how she knew that."[8]
Further, A.P.'s mother testified that when she entered the clubhouse, she found Hartman sitting across from A.P. with his penis exposed.
 {¶ 19} Thus, despite the lack of a definition in the Ohio Revised Code, the common sense and accepted usage of the term "lap dance" fits the definition of sexual activity. Words and phrases shall be read in context and construed according to the rules of grammar and common usage.[9]
 {¶ 20} Hartman, nevertheless, argues that we should adopt State v.Coopers[10] rationale and exonerate Hartman. We decline to do so.
 {¶ 21} In Cooper, the defendant asked the eight year old victim to pull down her clothes, and then said, "Let me show you something." The victim ran screaming from the room. The defendant was convicted of importuning, which was reversed on appeal. In reversing the conviction, the court stated: *Page 10 
 "We reluctantly agree with Cooper. In our view, Cooper's alleged conduct ought to be prohibited, but is not. At most, Cooper's conduct may have been preliminary to a solicitation to his victim to engage in sexual activity with him, which might constitute attempted importuning."[11]
 {¶ 22} That same court two years later in State v. Reaver1[12] took a different approach. In State v. Reaver, the accused in an importuning trial had approached two girls, one 13 years old, and stated "if you ever need something or something to grab, you know where I live." He then grabbed his crotch and walked away. The accused in Reaver citedCooper for the proposition that "importuning under R.C. 2907.07(A) requires a solicitation addressed to the child in a form reasonably calculated to cause the child to understand the nature of the request `and to afford the child an opportunity to consent to the request.'" The court in responding to Reaver's interpretation of Cooper held the following:
 "We acknowledge the quoted statement from Cooper, supra. Although the author of this opinion was also the author of that opinion, we cannot account for the importation of the additional requirement. It does appear, from the context in which the quoted passage appears in Cooper, that this was the State's construction of the statute with which we were agreeing. In any event, the issue in Cooper was whether the act of requesting a child of eight years to disrobe, combined with the remark `I've got something to show you,' could reasonably have been expected to be understood by the child as an invitation to engage in sexual activity. We concluded that that would not have been a reasonable expectation with respect to an eight-year old child, *Page 11 although we acknowledged that it might well have that connotation when addressed to an older person. We conclude that a solicitation to engage in sexual activity need not propose immediate consummation to constitute importuning."[13]
 {¶ 23} We agree with Reaver's interpretation and qualification ofCooper; as such, we conclude that if the fact finder believed that Hartman asked the eight year-old to perform a lap dance and offered her money, Hartman could be found to have committed the criminal acts of importuning and solicitation.
 {¶ 24} Hartman also argues that the request to perform a lap dance is not the equivalent of sexual activity. The State argued and we agree that in common usage a lap dance is considered in everyday parlance to mean some form of sexual conduct or contact.
 {¶ 25} Accordingly, viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt that Hartman, a fifty-year-old man, requested a lap dance from eight-year-old A.P., who knew what Hartman meant, who knew that Hartman was requesting a sexual act, and who declined the request. Thus, the trial court properly denied Hartman's motion for acquittal. Accordingly, we overrule the first assigned error.
 Manifest Weight of Evidence *Page 12 {¶ 26} In the second assigned error, Hartman argues his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 27} In State v. Wilson, [14] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at *Page 13 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 28} Our review of the statement Hartman made to the police corroborates A.P.'s testimony regarding the request for a lap dance. Hartman's statement to the police reveals the following exchange:
 "Q. Even if you were joking, did you say something to A*** about giving you a lap dance?
 A. If I said anything to her I said, `You can't give me a lap dance. You've got nothing to offer somebody that's looking for a dance. It would not be right for you to be dancing for me."[15]
 "***
 "Q. You said that she doesn't have anything to offer anybody that would want a lap dance. What does that mean?
 A. Got no accouterments. She's too small, too flat, too straight. Plus, since she is fully clothed, there's nothing to look at. It's not like going to Bugsy's and seeing a girl in a bikini that has curves."[16] *Page 14 
 {¶ 29} The trial court could have reasonably inferred from the above exchange and elsewhere in the record, that Hartman approached A.P., gave her $40, and requested a lap dance. Although, Hartman claims that he gave her $40 for work that she would perform in the future, the trial court was clearly not persuaded. The determination of weight and credibility of the evidence is for the trier of fact.[17]
 {¶ 30} Therefore, we do not find that the trial court lost its way in finding the evidence presented at trial to be credible, and we find that Hartman's convictions are not against the manifest weight of the evidence. Accordingly, we overrule the second assigned error.
 Adam Walsh Act {¶ 31} In the third assigned error, Hartman argues that the application of the Adam Walsh Act violates the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution. We disagree.
 {¶ 32} The Sex Offender Registration and Notification Act (SORNA) is contained in the Adam Walsh Act and requires convicted sex offenders to register in the jurisdiction in which he or she resides. SORNA is incorporated into Ohio law.[18]
 {¶ 33} We have held, however, that "SORNA, as set forth in the Adam Walsh Act, does not violate *** ex post facto protections."[19] We have also found that *Page 15 
SORNA, as set forth in the Adam Walsh Act, does not violate the Retroactivity Clause of the Ohio Constitution.[20] Accordingly, we overrule the third assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] We refer to the children by their initials pursuant to this court's established policy not to disclose the names of children.
[2] Tr. 42-43.
[3] Tr. 46.
[4] (1978), 55 Ohio St.2d 261, syllabus.
[5] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[6] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
8
[7] Tr. 46.
[8] Tr. 98.
[9] R.C. 1.42.
[10] (1994), 92 Ohio App.3d 108, 2nd Dist. No. 13980.
[11] Id.
[12] (Nov. 1, 1996), 2nd Dist. No. 15679.
[13] Id. at ¶ 6.
[14] 113 Ohio St.3d 382, 2007-Ohio-2202.
[15] State's Exhibit 26.
[16] Id.
[17] State v. Chandler, 10th Dist. No. 05AP-415,2006-Ohio-2070, citing State v. DeHass (1967), 10 Ohio St.2d 230.
[18] See R.C. 2950 et seq.
[19] State v. Holloman-Cross, Cuyahoga App. No. 90351, 2008-Ohio-2189. See, also, State v. Dunlap, Cuyahoga App. No. 91165, 2009-Ohio-134.
[20] State v. Ellis, Cuyahoga App. No. 90844, 2008-Ohio-6283. *Page 1