JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Patrick Omiecinski, appeals from a judgment of the Cuyahoga County Court of Common Pleas adjudicating him a sexually oriented offender and sentencing him to four years in prison. For the following reasons, we affirm.
 {¶ 2} In February 2007, Omiecinski was indicted on nine counts, including six counts of sexual battery, in violation of R.C. 2907.03, and three counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04. Omiecinski pled guilty to three counts of sexual battery, and pursuant to the plea agreement, all other counts were nolled.
 {¶ 3} In September 2007, the trial court found that Omiecinski was not a sexual predator or habitual sexual offender, but did find that he was a sexually oriented offender. The trial court then sentenced Omiecinski to two years on count one, one year on count four, and one year on count five, and ordered that they be served consecutive to one another, for an aggregate sentence of four years in prison. The trial court also informed Omiecinski that he would be subject to five years of postrelease control and "advised" him that, as of January 2008, he would be classified as a Tier III offender under the Adam Walsh Act ("AWA"). *Page 4 
 {¶ 4} It is from this judgment that Omiecinski appeals, raising three assignments of error for review:
 {¶ 5} "[1.] The trial court erred in sentencing appellant to consecutive sentences which were contrary to law.
 {¶ 6} "[2.] The appellant's plea was not knowingly, intelligently, and voluntarily given when he was not informed of the consequences of his guilty plea.
 {¶ 7} "[3.] The application of the Adam Walsh Act is an ex post facto application, undermining the will of the judiciary and denying appellant of his right to due process guaranteed by the Ohio and United States Constitutions and the Ex Post Facto Clause of Section 10, Article I, of the United States Constitution and Section 28, Article II, of the Ohio Constitution."
 Consecutive Sentences {¶ 8} In his first assignment of error, Omiecinski argues that his consecutive sentences were contrary to law. He maintains that the trial court failed to "conduct an adequate analysis" under R.C. 2929.11 or2929.12. We disagree.
 {¶ 9} At the outset, we note that Omiecinski did not object to his sentence. In State v. Payne, 114 Ohio St.3d 502, _15-17, the Ohio Supreme Court explained: *Page 5 
 {¶ 10} "Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only `[p]lain errors or defects affecting substantial rights.' Crim. R. 52(B). Inherent in the rule are three limits placed on reviewing courts for correcting plain error.
 {¶ 11} "`First, there must be an error, i.e., a deviation from the legal rule. *** Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. *** Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240. Courts are to notice plain error `only to prevent a manifest miscarriage of justice.' State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 12} "The burden of demonstrating plain error is on the party asserting it. See, e.g., State v. Jester (1987), 32 Ohio St.3d 147, 150. A reversal is warranted if the party can prove that the outcome `would have been different absent the error.' State v. Hill (2001),92 Ohio St.3d 191, 203." (Parallel citations omitted.) *Page 6 
 {¶ 13} Here, Omiecinski does not raise plain error and, thus, does not show us how the outcome would have been different absent the alleged error. Nonetheless, we will review Omiecinski's sentence under a plain error analysis.
 {¶ 14} Appellate courts review sentences by applying a two-prong approach set forth by the Ohio Supreme Court in State v. Kalish,120 Ohio St.3d 23, 2008-Ohio-4912. See State v. Nolan, 8th Dist. No. 90646,2008-Ohio-5595, _8. First, we must determine whether the sentence is clearly and convincingly contrary to law. Id. If it is not contrary to law, then we must decide if the sentencing court abused its discretion when sentencing the defendant. Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 15} Prior to State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, unless certain findings were made by the trial court, a defendant was entitled to a presumption of the minimum sentence and a presumption of concurrent sentences. Foster at _44, citing R.C. 2929.14(B), (C), and (E). In Foster, however, the Ohio Supreme Court declared these statutory subsections unconstitutional. Id. at paragraphs one and three of the syllabus. Post-Foster, a court is no longer required to engage in the judicial fact-finding exercise formerly mandated by these statutes; therefore, a defendant is no longer entitled to a *Page 7 
presumption of the shortest prison term or concurrent sentences. Id. at paragraphs two and four of the syllabus. Moreover, post-Foster, a court is vested with the discretion to sentence a defendant to any sentence allowable by law under R.C. 2929.14(A). Id. at paragraph seven of the syllabus.
 {¶ 16} Even after Foster, trial courts must still consider R.C. 2929.11 and 2929.12. However, "where the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes."Kalish, supra, at _18, fn. 1.
 {¶ 17} The trial court sentenced Omiecinski within the statutory range for each conviction and made them consecutive to one another, as permitted within the statutory framework. Thus, Omiecinski's sentence was not contrary to law.
 {¶ 18} In the sentencing entry, the trial court noted that it considered "all required factors under law." At the hearing, it stated that it considered the presentence investigation report, the psychiatric clinic report, and letters from Omiecinski's friends and family. It stated that it was particularly bothered by the fact that Omiecinski had said that he knew what he was doing was wrong, yet he continued to do it. The trial court also found it troubling that Omiecinski was in a position of authority over the victim as her soccer coach. Thus, Omiecinski's sentence was not arbitrary, unreasonable, or unconscionable. *Page 8 
 {¶ 19} Accordingly, we find no plain error since Omiecinski's sentence was neither contrary to law nor an abuse of discretion. His first assignment of error is overruled.
 Crim. R. 11 — Guilty Plea {¶ 20} In his second assignment of error, Omiecinski argues that the trial court erred when it accepted his guilty plea because it failed to comply with Crim. R. 11. Specifically, Omiecinski contends that his plea was not knowingly, voluntarily, and intelligently entered into because although the trial court "advised" him at his sentencing hearing that he would be classified as a Tier III offender under the AWA, it failed to inform him at his plea hearing.
 {¶ 21} Under Crim. R. 11(C), a trial court may not accept a guilty plea from a criminal defendant in a felony case without first addressing the defendant personally and informing him of the effect of the plea and determining that he understands the consequences of the guilty plea. The trial court must substantially comply with those requirements of Crim. R. 11 that do not involve the waiver of a constitutional right. State v.Ballard (1981), 66 Ohio St.2d 473, 476. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."State v. Nero (1990), 56 Ohio St.3d 106, 108. *Page 9 
 {¶ 22} At Omiecinski's plea hearing, with respect to his sexually oriented offender classification, the trial court informed him that by pleading guilty to sexual battery, he would automatically be classified as a sexually oriented offender. In addition, the trial court told Omiecinski that he could be classified as a habitual sexual offender or sexual predator. The trial court explained the registration and reporting requirements of all three classifications. With respect to possibly being classified as a sexual predator, the trial court stated, "[i]f you are classified as a sexual predator, sir, you will have to report for the rest of your life every 90 days. Do you understand that?" The trial court then explained the consequences of failing to register and report. The trial court asked Omiecinski, "[k]nowing all that, is it still your intention to plead guilty here today?" He replied, "[y]es, ma'am."
 {¶ 23} After reviewing the transcript of the plea hearing, it is clear that the trial court provided accurate information to Omiecinski regarding classification and registration as it existed at the time he entered into his plea. Omiecinski, however, argues that this was not sufficient and that the trial court should have informed him of his future obligations under the AWA as enacted by S.B. 10. We disagree.
 {¶ 24} Prior to S.B. 10 (Ohio's Adam Walsh Act), trial courts were not obligated to inform a sex offender of the registration and notification *Page 10 
requirements of the former R.C. Chapter 2950 before accepting a plea. See State v. Perry, 8th Dist. No. 82085, 2003-Ohio-6344, _9; State v.Dotson, 12th Dist. No. CA2007-11-025, 2008-Ohio-4965, _28; State v.Isaac, 2d Dist. No. CA03-CA-91, 2004-Ohio-4683, _33; State v.O'Neill, 7th Dist. No. 03MA188, 2004-Ohio-6805, _36. As the court inState v. Cupp, 2d Dist. Nos. 21176, 21348, 2006-Ohio-1808, _10, explained:
 {¶ 25} "We have described the registration and notification requirements as collateral consequences of a defendant's guilty plea to a sex offense. State v. Condron (Mar. 27, 1998), 2d Dist. No. 16430, (`Because Megan's laws are not punitive, the registration and notification requirements are collateral consequences of a defendant's guilty plea.'). Therefore, a trial court is not obligated to inform a defendant about these requirements before accepting his plea, and its failure to do so does not render the plea invalid. State v. Abrams (Aug. 20, 1999), 2d Dist. No. 17459."
 {¶ 26} Thus, we must determine if S.B. 10 altered R.C. Chapter 2950
such that the statute is now punitive, rather than remedial.[1] If so, then a trial court's *Page 11 
failure to fully explain the registration and notification requirements of R.C. Chapter 2950 may render his plea invalid.
 Ohio's Adam Walsh Act — Punitive Versus Remedial {¶ 27} We note at the outset that this court, as well as several other appellate districts, has addressed the issue of whether the changes to R.C. Chapter 2950 under S.B. 10 have altered the statute such that it is now punitive, rather than remedial (whether discussing it in the context of an Ex Post Facto violation or otherwise). Each one (including this court) has determined that R.C. Chapter 2950, as modified by S.B. 10, remains remedial in nature and not punitive. See, e.g., State v.Rabel, 8th Dist. No. 91280, 2009-Ohio-350, citing State v. Ellis, 8th Dist. No. 90844, 2008-Ohio-6283; State v. King, 2d Dist. No. 08-CA-02,2008-Ohio-3594; State v. Gant, 3d Dist. No. 1-08-11, 2008-Ohio-5198;In re Kristopher W., 5th Dist. No. 2008 AP030022, 2008-Ohio-6075;Montgomery v. Leffler-State of Ohio, 6th Dist. No. H-08-011,2008-Ohio-6397; State v. Byers, 7th Dist. No. 07CO39, 2008-Ohio-5051;In re G.E.S., 9th Dist. No. 24079, 2008-Ohio-4076; and State v.Williams, 12th Dist. No. CA2008-02-029, 2008-Ohio-6195.
 {¶ 28} S.B. 10 modified R.C. Chapter 2950 ("Megan's Law") so that it would be in conformity with the federal AWA.[2] The changes made to *Page 12 
R.C. Chapter 2950 by S.B. 10 altered the sexual offender classification system. Under pre-S.B. 10, depending on the crime committed and the findings by the trial court at the sexual classification hearing, an offender who committed a sexually oriented offense could be labeled a sexually oriented offender, a habitual sex offender, or a sexual predator. See former R.C. 2950.09. Each classification required registration and notification requirements.
 {¶ 29} S.B. 10 abolished those classifications. The new provisions leave little, if any, discretion to the trial court in classifying an offender. See R.C. 2950.01. Instead, the statute requires the trial court to classify an offender based solely on his or her conviction. Depending on what crime the offender committed, they are placed in Tier I, Tier II, or Tier III. R.C. 2950.01(E)-(G). The tiers dictate what the registration and notification requirements are. Tier I is the lowest tier. A Tier I sex offender must register once annually for 15 years, but there are no community notification requirements. Tier II requires registration every 180 days for 25 years, but it also has no community notification requirements. Tier III, the highest tier and similar to the old sexual predator finding, requires registration every 90 days for life, and the community notification may occur every 90 days for life. See R.C. 2950.07. *Page 13 
 Former R.C. Chapter 2950 {¶ 30} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Ohio Supreme Court addressed whether former R.C. Chapter 2950, as applied to conduct prior to the effective date of the statute, violated the Ohio Constitution's prohibition on retroactive laws and the Ex Post Facto Clause of the United States Constitution. The Supreme Court noted that former R.C. Chapter 2950 sought to "protect the safety and general welfare of the people of this state," which was a "paramount governmental interest." Id. at 417. It held that because the statute was remedial rather than punitive, the registration provisions of former R.C. Chapter 2950 did not violate the Ohio Constitution's ban on retroactive laws. Id. at 413. The Supreme Court reasoned that in light of the statute's remedial nature, and because there was no clear proof that the statute was punitive in its effect, the registration and notification provisions of former R.C. Chapter 2950 did not violate the Ex Post Facto Clause of the United States Constitution. Id. at 423.
 {¶ 31} Two years later, in State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, the Ohio Supreme Court addressed whether the registration and notification provisions of former R.C. Chapter 2950 amounted to double jeopardy. The Supreme Court held that because former R.C. Chapter 2950 was "neither `criminal,' nor a statute that inflicts punishment," former *Page 14 
R.C. Chapter 2950 did not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. Id. at 528. Subsequently, in State v.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Ohio Supreme Court reiterated that "the sex-offender-classification proceedings under [former] R.C. Chapter 2950 are civil in nature[.]" Id. at _32.[3]
 {¶ 32} Former R.C Chapter 2950 was amended by S.B. 5 in 2003. The amendments required that the designation "predator," and the concomitant duty to register, remain for life; required sex offenders were to register in three different counties (that is, county of residence, county of employment, and county of school) every 90 days (as opposed to registering only in their county of residence); and the community notification requirements were expanded.
 {¶ 33} Recently, in State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio 4824, the Ohio Supreme Court addressed whether the S.B. 5 amendments, as applied to conduct prior to the effective date of the statute, violated the Ex Post Facto *Page 15 
Clause of the United States Constitution and the Ohio Constitution's prohibition on retroactive laws. Once again, noting the civil, remedial nature of the statute, the Supreme Court held that the S.B. 5 amendments to former R.C. Chapter 2950 neither violated the retroactivity clause of the Ohio Constitution nor the Ex Post Facto Clause of the United States Constitution. Id. at _36, 40, and 43.[4]
 S.B. 10 — Ohio's Adam Walsh Act {¶ 34} To determine if the amendments set forth in S.B. 10 are punitive in nature, and not civil or remedial, we shall turn to the "intent-effects" test used by the Ohio Supreme Court in Cook. Id. at 415. First, we must determine if the legislature intended the statute to be punitive or remedial. If the intent is found to be remedial, then we must determine if the statute has such a punitive effect that it negates its remedial intent. Id. at 418, citing Allen v. Illinois (1986),478 U.S. 364. *Page 16 
 {¶ 35} Upon reviewing S.B. 10, we find that the legislature's intent in enacting the statute was civil, not punitive. "A court must look to the language and the purpose of the statute in order to determine legislative intent." Cook at 416. S.B. 10 is devoid of any language indicating an intent to punish. To the contrary, and just as the Ohio Supreme Court found in Cook with regard to former R.C. Chapter 2950, the legislature has expressly declared that the intent of S.B. 10 is "to protect the safety and general welfare of the people of this state," which is "a paramount governmental interest"; and that "the exchange or release of [information required by this law] is not punitive." R.C. 2950.02; Cook at 417. In fact, the language in former R.C. Chapter 2950, which the Supreme Court in Cook relied on to find that the legislature's intent was remedial, is almost identical to the language used in S.B. 10.
 {¶ 36} Having found that the legislative intent of S.B. 10 is not punitive, we must now turn to the question of whether theeffect of the legislation negates its intent. We agree with the thorough reasoning of the Third, Seventh, Ninth, and Twelfth Appellate Districts on this issue — that it does not. See Gant, supra; Byers, supra; In reG.E.S., supra; and Williams, supra.
 {¶ 37} As the Seventh District noted in Byers, the registration requirements under S.B. 10 "are more involved" than the requirements in the former R.C. Chapter 2950 that were discussed in Cook. Id. at _33. Nonetheless, *Page 17 
the Ohio Supreme Court continues to uphold the more restrictive amendments to the statute. We agree that "[w]hile some may view [Justice Lanzinger's] reasoning to be persuasive and logical, we must follow the Supreme Court's decision in Cook and the majority decision inWilson that offender classification is civil in nature and the registration requirement is still de minimus; Cook and Wilson are still controlling law." Id. at _37.
 {¶ 38} The Byers court further stated:
 {¶ 39} "Senate Bill 10's R.C. Chapter 2950 may not be the narrowly tailored dissemination of information that was contemplated byCook. However, as stated above, Cook is still controlling law and as ofWilson, the Supreme Court was still of the opinion that sex offender classification was still remedial and not punitive. *** Admittedly, Senate Bill 10 does make some changes to the classification procedure. It changes the classification types from sexually oriented offender, habitual sex offender, and sexual predator to Tier I, Tier II and Tier III. It also provides a more systematic determination of what offenses fall into what classification. Lastly, it increases the registration period. Tier I is 15 years, while a sexually oriented offender would only have been 10 years. Tier II is 25 years, while a habitual sex offender was 20 years. Tier III is a lifetime registration requirement, which sexual predator has always been. But those changes do not clearly indicate that Wilson and Cook are no longer controlling *Page 18 
and that the sexual offender classification system is now punitive rather than remedial." Id. at _55.
 {¶ 40} We agree with the Seventh District's reasoning and further note that one day after it released Byers, the Ohio Supreme Court releasedFerguson, upholding the S.B. 5 amendments to R.C. Chapter 2950 (which were even more restrictive than those discussed in Cook and Wilson).Ferguson adds to the strength of the Seventh District's reasoning that the Supreme Court will likely uphold the changes to R.C. Chapter 2950, under S.B. 10, as it has continually upheld prior versions.
 {¶ 41} This court further agrees with the Second District that it is unlikely that the Ohio Supreme Court will find difficulty with the AWA after its Cook decision or that the United States Supreme Court will find it unconstitutional after Smith v. Doe (2003), 538 U.S. 84 (upheld Alaska's version of Megan's Law). State v. King, 2d Dist. No. 08-CA-02,2008-Ohio-2594, _13.
 {¶ 42} Accordingly, we conclude that S.B. 10, which sets forth Ohio's version of the AWA, is civil and nonpunitive. Since the AWA is not punitive, just as under the former statute, the trial court was not required to explain the registration requirements to Omiecinski at his plea hearing.
 {¶ 43} Finally, the trial court did inform Omiecinski at his plea hearing that if he was classified as a sexual predator, he would have to report every 90 *Page 19 
days for the rest of his life. Omiecinski still pled guilty. Under S.B. 10, he would be classified as a Tier III offender. As a Tier III offender, he still will have to report every 90 days for life. Thus, we do not see how Omiecinski was prejudiced in any way by the trial court's failure to inform him at his plea hearing that he would be subject to the AWA in the future.
 {¶ 44} Omiecinski's second assignment of error is overruled.
 Ex Post Facto Challenge Premature {¶ 45} In his third assignment of error, Omiecinski argues that the Adam Walsh Act violates the Ex Post Facto Clause. Although the trial court "advised" Omiecinski at his sentencing hearing that he would be classified as a Tier III offender under the AWA, it adjudicated him a sexually oriented offender under the former R.C. Chapter 2950. Because Omiecinski has not been classified under the AWA, his constitutional challenge is premature. In re: R.P., 9th Dist. No. 23967,2008-Ohio-2673, _5; State v. Worthington, 3rd Dist. No. 9-07-62,2008-Ohio-3222, _9.
 {¶ 46} Accordingly, Omiecinski's three assignments of error are overruled. The judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 20 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS;
JAMES J. SWEENEY, J., DISSENTS IN PART WITH SEPARATE OPINION
[1] Whether S.B. 10 is punitive rather than remedial is directly related to the question of whether it violates the Ex Post Facto Clause of the United States Constitution or the Retroactivity Clause of the Ohio Constitution. Omiecinski raises the Ex Post Facto issue in his third assignment of error. Although we determine that this question is premature as it applies to him (see infra), we must address it as it relates to his second assignment of error; i.e., whether he knowingly and voluntarily pled guilty.
[2] All sections of S.B. 10 did not become effective on the same date. Sections 1 to 3 (and certain other provisions), became effective on July 1, 2007. The remaining portions became effective on January 1, 2008. See Am. Sub. S.B. 10, Final Bill Analysis.
[3] In Wilson, Justice Lanzinger, in a concurring in part and dissenting in part opinion (joined by Justice O'Conner and Judge Donavan), opined: "While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations are imposed upon those classified as sex offenders. All sexual predators and most habitual sex offenders are expected, for the remainder of their lives, to register their residences and their employment with local sheriffs. Moreover, this information will be accessible to all. The stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment, as the Cook court recognized. Id.,83 Ohio St.3d at 418. Therefore, I do not believe that we can continue to label these proceedings as civil in nature. These restraints on liberty are the consequences of specific criminal convictions and should be recognized as part of the punishment that is imposed as a result of the offender's actions." Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 45-46.
[4] Again in Ferguson, Justice Lanzinger dissented and was joined by Justices Pfeifer and Stratton. Discussing the S.B. 5 amendments, Justice Lanzinger stated that R.C. Chapter 2950 has evolved from a remedial statute to a punitive one, that the registration requirements are not merely "collateral to a criminal conviction," and that it violates the Ex Post Facto Clause of the United States Constitution. She pointed out that "S.B. 5 applies to all sex offenders, without regard to their future dangerousness." Id. at _59. She also noted that "[t]he reporting requirements themselves are exorbitant; S.B. 5 requires sexual predators to engage in perpetual quarterly reporting to the sheriff of the county in which they reside, work, and go to school, even if their personal information has not changed. *** And meriting heaviest weight in my judgment, S.B. 5 makes no provision whatever for the possibility of rehabilitation. Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. Prior to S.B. 5, a sexual predator had the opportunity to remove that label." Id. at _60.