JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This case consists of 17 consolidated appeals involving 17 appellants[1] convicted of various sex offenses who had previously been classified under H.B. 180, Ohio's Megan's Law (former R.C. Chapter 2950), and have now been classified under S.B. 10, Ohio's Adam Walsh Act ("AWA").[2] Because we find merit to appellants' eighth and ninth assignments of error, we affirm in part, reverse in part, and remand.
 {¶ 2} Appellants were notified by the Ohio Attorney General via registered letter that they would be reclassified under the AWA. They filed petitions challenging their reclassification under the AWA, as well as a request for a preliminary injunction to prevent the AWA from applying to them until the court ruled on their petitions. Several appellants who had been classified as a Tier III offender also requested the court to relieve them of community notification.
 {¶ 3} The trial court consolidated the cases, held a hearing, denied the petitioners' challenges and preliminary injunction request, and found the AWA to be *Page 4 
constitutional. It is from this judgment that appellants now appeal, raising nine assignments of error for our review.
 {¶ 4} "[I.] The retroactive application of Senate Bill 10 violates the Ex Post Facto Clause of the United States Constitution.
 {¶ 5} "[II.] The retroactive application of Senate Bill 10 violates the Retroactivity Clause of the Ohio Constitution.
 {¶ 6} "[III.] The retroactive application of Senate Bill 10 violates the separation of powers doctrine.
 {¶ 7} "[IV.] Senate Bill 10 violates the Double Jeopardy Clause of the United States Constitution and Section 10, Article I[,] of the Ohio Constitution.
 {¶ 8} "[V.] Senate Bill 10, as applied to appellant[s], violates the United States and Ohio Constitutions' prohibition against cruel and unusual punishment.
 {¶ 9} "[VI.] Senate Bill 10's residency restrictions violate the due process clauses of the United States and Ohio Constitution [sic].
 {¶ 10} "[VII.] The retroactive application of Senate Bill 10 constitutes a breach of appellant's [sic] plea agreements and impairs the obligation of contract protected by Article I, Section 10, Clause I of the United States Constitution and Section 28, Article II[,] of the Ohio Constitution.
 {¶ 11} "[VIII.] The trial court erred by categorically denying appellants relief from community notification pursuant to R.C. 2950.11(F)(2). *Page 5 
 {¶ 12} "[IX.] The trial court erred in dismissing appellants Mark Patterson and Robert Zamora's petitions with prejudice for failing to appear at the April 23, 2008 hearing."
 Background {¶ 13} S.B. 10 modified former R.C. Chapter 2950 ("Megan's Law") so that it would be in conformity with the federal AWA. The changes made to R.C. Chapter 2950 by S.B. 10 altered the sexual offender classification system. Under pre-S.B. 10, depending on the crime committed and the findings by the trial court at the sexual classification hearing, an offender who committed a sexually oriented offense could be labeled a sexually oriented offender, a habitual sex offender, or a sexual predator. See former R.C. 2950.09. Each classification required registration and notification requirements.
 {¶ 14} Under Megan's Law, a sexually oriented offender was required to register with the sheriff in the county of his or her residence, employment, and school annually for ten years. A sexually oriented offender was not subject to "community notification" of this information; i.e., the information a sexually oriented offender was required to provide to the sheriff was not shared with the public. A habitual sex offender was required to register his or her address annually for 20 years and may or may not have been subject to community *Page 6 
notification. A sexual predator was required to register every 90 days for life and was subject to community notification.
 {¶ 15} S.B. 10 abolished those classifications. The new provisions leave little, if any, discretion to the trial court in classifying an offender. See R.C. 2950.01. Instead, the statute requires the trial court to classify an offender based solely on his or her conviction. Depending on what crime the offenders committed, they are classified as a Tier I, Tier II, or Tier III sex offender. R.C. 2950.01(E)-(G). The tiers dictate the registration and notification requirements. Tier I is the least restrictive tier, requiring a Tier I sex offender to register once annually for 15 years, but there are no community notification requirements. Tier II requires registration every 180 days for 25 years, but it also has no community notification requirements. Tier III, the most restrictive and similar to the former sexual predator finding, requires registration every 90 days for life, and community notification may occur every 90 days for life. See R.C. 2950.07 and 2950.11.
 {¶ 16} The stated purpose of S.B. 10 is "*** to provide increased protection and security for the state's residents from persons who have been convicted of, or found to be delinquent children for committing, a sexually oriented offense or a child-victim oriented offense ***." See S.B. 10, Section 5. Similar language is used in the purpose section of the federal act. ("In order to protect the public *Page 7 
from sex offenders and offenses against children, *** Congress in this chapter establishes a comprehensive national system for the registration of those offenders ***.") Section 16901, Title 42, U.S. Code. Moreover, the Ohio legislature has declared that the purpose of sex offender registration is not punitive, but "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). This statement of purpose antedates the present amendment. See State v. Ferguson,120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 28.
 Ex Post Facto and Retroactivity {¶ 17} In their first two assignments of error, appellants claim that the application of S.B. 10 to crimes that occurred before January 1, 2008, violates the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution.
 {¶ 18} We start with the proposition that statutes, including amendments to those statutes, that are enacted in Ohio are presumed to be constitutional. Ferguson at ¶ 12. Therefore, unless appellants can demonstrate, beyond a reasonable doubt, that S.B. 10 is unconstitutional, it remains valid. Id.
 {¶ 19} The Ex Post Facto Clause, Section 10, Article I, United States Constitution, prohibits the passage of an enactment which may, inter alia, criminalize acts that were innocent when committed or "`changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Miller v. Florida (1987), 482 U.S. 423,429, quoting Calder v. Bull (1798), 3 U.S. 386. *Page 8 
Likewise, the Retroactivity Clause, Section 28, Article II, Ohio Constitution, bans the enactment of retroactive statutes that impair vested, substantive rights, but not those rights that are merely remedial and civil in nature. State v. Graves, 4th Dist. No. 07CA3004,2008-Ohio-5763, ¶ 11. Thus, both contentions turn upon whether Ohio's AWA is punitive, rather than remedial.
 {¶ 20} At the outset, we note that this court has already addressed the issue of whether the changes made to R.C. Chapter 2950 altered the statute such that it is now punitive, rather than remedial. We held that the AWA is not punitive, and does not violate either the Ohio or United States constitutional clauses at issue. State v. Ellis, 8th Dist. No. 90844, 2008-Ohio-6283; State v. Rabel, 8th Dist. No. 91280,2009-Ohio-350; and State v. Omiecinski, 8th Dist No. 90510,2009-Ohio-1066.
 {¶ 21} Every other Ohio appellate district has also held that R.C. Chapter 2950, as modified by S.B. 10, remains remedial in nature and is not punitive. See, e.g., Sewell v. State, 1st Dist. No. C-080503,2009-Ohio-872; State v. King, 2d Dist. No. 08-CA-02, 2008-Ohio-2594;In re Gant, 3d Dist. No. 1-08-11, 2008-Ohio-5198; Graves, supra; In reKristopher W., 5th Dist. No. 2008 AP030022, 2008-Ohio-6075;Montgomery v. Leffler, 6th Dist. No. H-08-011, 2008-Ohio-6397; State v.Byers, 7th Dist. No. 07CO39, 2008-Ohio-5051; In re G.E.S., 9th Dist. No. 24079, 2008-Ohio-4076; State v. Swank, 11th Dist. No. 2008-L-019,2008-Ohio-6059; and State v. Williams, 12th Dist. No. CA2008-02-029,2008-Ohio-6195. In *Page 9 
addition, federal courts that have addressed the issue have also reached the same result. See United States v. Markel (W.D.Ark. 2007), 2007 U.S. Dist. LEXIS 27102; see, also, United States v. Templeton (W.D.Okla. 2007), 2007 U.S. Dist. LEXIS 8930.
A. Ohio Supreme Court Cases on Former R.C. Chapter 2950
 {¶ 22} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Ohio Supreme Court addressed whether former R.C. Chapter 2950, as applied to conduct prior to the effective date of the statute, violated the Ohio Constitution's prohibition on retroactive laws and the Ex Post Facto Clause of the United States Constitution. The Supreme Court noted that former R.C. Chapter 2950 sought to "protect the safety and general welfare of the people of this state," which was a "paramount governmental interest." Id. at 417. It held that because the statute was remedial rather than punitive, the registration provisions of former R.C. Chapter 2950 also did not violate the Ohio Constitution's ban on retroactive laws. Id. at 413. The Supreme Court reasoned that in light of the statute's remedial nature, and because there was no clear proof that the statute was punitive in its effect, the registration and notification provisions of former R.C. Chapter 2950 did not violate the Ex Post Facto Clause of the United States Constitution. Id. at 423. *Page 10 
 {¶ 23} Two years later, in State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, the Ohio Supreme Court addressed whether the registration and notification provisions of former R.C. Chapter 2950 amounted to double jeopardy. The Supreme Court held that because former R.C. Chapter 2950 was "neither `criminal,' nor a statute that inflicts punishment," former R.C. Chapter 2950 did not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. Id. at 528. Subsequently, inState v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Ohio Supreme Court reiterated that "the sex-offender-classification proceedings under [former] R.C. Chapter 2950 are civil in nature[.]" Id. at ¶ 32.[3]
 {¶ 24} Former R.C. Chapter 2950 was amended by S.B. 5 in 2003. The amendments (1) required the designation "sexual predator" and the concomitant duty to register remain for life; (2) required sex offenders to register in three different counties (that is, county of residence, county of employment, and county *Page 11 
of school) every 90 days (as opposed to registering only in their county of residence); (3) expanded community notification requirements; and (4) required any information in the registration process be included on an internet data base. See S.B. 5.
 {¶ 25} Recently, in Ferguson, the Ohio Supreme Court addressed whether the S.B. 5 amendments, as applied to conduct prior to the effective date of the statute, violated the Ex Post Facto Clause of the United States Constitution and the Ohio Constitution's prohibition on retroactive laws. Once again, noting the civil, remedial nature of the statute, the Supreme Court held that the S.B. 5 amendments to former R.C. Chapter 2950 neither violated the Retroactivity Clause of the Ohio Constitution nor the Ex Post Facto Clause of the United States Constitution. Id. at _36, 40, and 43.[4]
 B. Punitive versus Remedial *Page 12 
 {¶ 26} To determine if the amendments set forth in S.B. 10 are punitive in nature, and not civil or remedial, we shall turn to the "intent-effects" test used by the Ohio Supreme Court in Cook. Id. at 415. First, we must determine if the legislature intended the statute to be punitive or remedial. If the intent is found to be remedial, then we must determine if the statute has such a punitive effect that it negates its remedial intent. Id. at 418, citing Allen v. Illinois (1986),478 U.S. 364.
 {¶ 27} Upon reviewing S.B. 10, we find that the legislature's intent in enacting the statute was clearly civil, not punitive. "A court must look to the language and the purpose of the statute in order to determine legislative intent." Cook at 416. S.B. 10 is devoid of any language indicating an intent to punish. To the contrary, and just as the Ohio Supreme Court found in Cook with regard to former R.C. Chapter 2950, the legislature has expressly declared that the intent of S.B. 10 is "to protect the safety and general welfare of the people of this state," which is "a paramount governmental interest"; and that "the exchange or release of [information required by this law] is not punitive." R.C. 2950.02; Cook at 417. Indeed, the language in former R.C. Chapter 2950, which the Supreme Court in Cook relied on to find that the legislature's intent was remedial, is almost identical to the language used in S.B. 10. *Page 13 
 {¶ 28} A more difficult issue is whether S.B. 10 is so punitive in effect as to negate the legislature's non-punitive intent. As the Seventh District noted in Byers, the registration requirements under S.B. 10 "are more involved" than the requirements in the former R.C. Chapter 2950 that were discussed in Cook. Id. at _33. Nonetheless, we agree that "[w]hile some may view [Justice Lanzinger's] reasoning to be persuasive and logical, we must follow the Supreme Court's decision inCook and the majority decision in Wilson that offender classification is civil in nature and the registration requirement is still de minimus;Cook and Wilson are still controlling law." Id. at ¶ 37.
 {¶ 29} The Byers court further stated:
 {¶ 30} "Senate Bill 10's R.C. Chapter 2950 may not be the narrowly tailored dissemination of information that was contemplated byCook. However, as stated above, Cook is still controlling law and as ofWilson, the Supreme Court was still of the opinion that sex offender classification was still remedial and not punitive. *** Admittedly, Senate Bill 10 does make some changes to the classification procedure. It changes the classification types from sexually oriented offender, habitual sex offender, and sexual predator to Tier I, Tier II and Tier III. It also provides a more systematic determination of what offenses fall into what classification. Lastly, it increases the registration period. Tier I is 15 years, while a sexually oriented offender would only have been 10 years. Tier *Page 14 
II is 25 years, while a habitual sex offender was 20 years. Tier III is a lifetime registration requirement, which sexual predator has always been. But those changes do not clearly indicate that Wilson andCook are no longer controlling and that the sexual offender classification system is now punitive rather than remedial." Id. at ¶ 55.
 {¶ 31} Notably, one day after the Seventh District releasedByers, the Ohio Supreme Court released Ferguson, upholding the S.B. 5 amendments to R.C. Chapter 2950 (which were even more restrictive than those discussed in Cook and Wilson). Ferguson adds to the strength of the Seventh District's reasoning that the Supreme Court will likely uphold the changes to R.C. Chapter 2950, under S.B. 10, as it has continually upheld prior versions.
 {¶ 32} This court further agrees with the Second District that it is unlikely that the Ohio Supreme Court will find difficulty with the AWA after its Cook decision or that the United States Supreme Court will find it unconstitutional after Smith v. Doe (2003), 538 U.S. 84 (upheld Alaska's version of Megan's Law). King, supra, at ¶ 13.
 {¶ 33} Accordingly, we conclude that S.B. 10, which sets forth Ohio's version of the AWA, is civil in nature, and not punitive. Appellants' first and second assignments of error are overruled.
 Separations of Powers *Page 15 {¶ 34} In their third assignment of error, appellants argue that the retroactive application of S.B. 10 violates the separation-of-powers doctrine because the legislative and executive branches interfere with a prior court adjudication regarding their sex offender status.
 {¶ 35} First, appellants claim that "[p]rior to the enactment of the AWA, the determination of whether and how an offender had to register as a sexual offender was specifically reserved for the judiciary." That is simply not the case, however. Under former R.C. Chapter 2950, an offender who committed a sexually oriented offense that was not registration-exempt was classified by operation of law as a sexually oriented offender. No judicial action was required, and courts had no discretion to remove the label. Similarly, under S.B. 10, sex offenders are placed by operation of law into tiers based upon the crime they committed. Courts have no discretion to determine that a sex offender should not be placed into a tier. Under both systems, offenders are essentially classified by the offense they committed. SeeMontgomery, supra.
 {¶ 36} In fact, "the classification of sex offenders into categories has always been a legislative mandate, not an inherent power of the courts. Slagle v. State, 145 Ohio Misc.2d 98, 2008-Ohio-593. Without the legislature's creation of sex offender classifications, no such classification would be warranted. Therefore, *** we cannot find that sex offender classification is anything other than a creation of the legislature, and therefore, the power to classify is properly expanded or limited by the *Page 16 
legislature." In re Smith, 3d Dist. No. 1-07-58, 2008-Ohio-3234, _39 (holding that S.B. 10 does not violate the separation-of-powers doctrine). See, also, Smith, supra; State v. Randlett, 4th Dist. No. 08CA3046, 2009-Ohio-112; and Williams, 2008-Ohio-6195.
 {¶ 37} Appellants further claim that S.B. 10 violates the separations-of-powers doctrine by requiring the executive branch, namely, the Ohio Attorney General, to interfere with a prior final adjudication. S.B. 10, however, does not require the Attorney General to reopen final court judgments. See Slagle, supra. It simply changes the classification and registration requirements for sex offenders and requires that the new procedures be applied to sex offenders currently registered under the old law or offenders currently incarcerated for committing sexually oriented offenses. In Cook, the Ohio Supreme Court made it clear that appellants should not have a reasonable expectation that their sex offenses would never be made the subject of future sex-offender legislation. Id. at 412. Thus, S.B. 10 cannot be said to abrogate a final judicial determination.
 {¶ 38} Accordingly, S.B. 10 does not violate the separation-of-powers doctrine. Appellants' third assignment of error is overruled.
 Double Jeopardy {¶ 39} In their fourth assignment of error, appellants maintain that S.B. 10 violates the Double Jeopardy Clause of the United States and Ohio Constitutions. Specifically, they argue that because S.B. 10 is "punitive in both its intent and effect *Page 17 
and therefore, as applied to appellants, constitutes additional punishment" that it is prohibited by double jeopardy protections.
 {¶ 40} Since this court has already determined that S.B. 10 is a civil, remedial statute, and not a criminal, punitive statute, we find that S.B. 10 does not violate double jeopardy rights. See, also,Smith, supra; Byers, supra; and Slagle, supra. Accordingly, appellants' fourth assignment of error is overruled.
 Cruel and Unusual Punishment {¶ 41} In their fifth assignment of error, appellants contend that the application of S.B. 10, as applied to them, violates the prohibition of cruel and unusual punishment as protected by the United States and Ohio Constitutions. They argue that the registration, notification, and residency restrictions imposed by S.B. 10 are disproportionate to their crimes. We disagree.
 {¶ 42} It is true that under S.B. 10, several of the appellants will have to register for a longer period of time. Under the old law, a sexually oriented offender had to register for 10 years. Under S.B. 10, even the least restrictive, a Tier I offender, has to register for 15 years. Thus, the reporting period is longer under S.B. 10.
 {¶ 43} The fact that a sex offender has to register for a longer period of time, however, does not change the fact that S.B. 10 is remedial, and not punitive. As the Seventh District stated inByers, "[a]s long as R.C. Chapter 2950 is viewed as civil, and not criminal — remedial and not punitive — then the period of registration cannot *Page 18 
be viewed as punishment. Accordingly, it logically follows that it does not constitute cruel and unusual punishment since the punishment element is lacking." Id. at _77.
 {¶ 44} Appellants' fifth assignment of error is overruled.
 Due Process — Residency Restrictions {¶ 45} In their sixth assignment of error, appellants argue that S.B. 10 violates their substantive and procedural due process rights protected by both the Ohio and United States Constitutions. Specifically, they claim that "[b]y restricting sex offenders to residences that are not located within 1000 feet of any school, preschool or day-care center, R.C. 2950.034 clearly infringes an individual's constitutional right to establish the residence of their [sic] own choosing."
 {¶ 46} First, there is absolutely no evidence in the record before us, nor do any of the appellants claim, that they currently reside within 1,000 feet of a school, preschool, or daycare center. Nor have any of the appellants alleged that they were forced to move from an area due to their proximity to a school, preschool, or daycare center, or that they have any intention of moving to a residence within 1,000 feet of a school, preschool, or daycare center.
 {¶ 47} This court has held that where the offender does not presently claim to reside "within 1,000 feet of a school, or that he was forced to move from an area because of his proximity to a school[,]" the offender "lacks standing to challenge the constitutionality" of the residency restrictions. State v. Peak, 8th Dist. No. 90255, 2008-Ohio-3448, _8-9; see, also, State v. Pierce, 8th Dist. No. 88470, 2007-Ohio-3665, _33; *Page 19 
and State v. Amos, 8th Dist. No. 89855, 2008-Ohio-1834. The United States District Court for the Southern District of Ohio has reached the same conclusion. Coston v. Petro (S.D.Ohio 2005), 398 F.Supp.2d 878,882-883. "`The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision.'" Pierce at _33, quoting Palazzi v. Estate of Gardner (1987),32 Ohio St.3d 169, syllabus.
 {¶ 48} Accordingly, we agree with the state that this issue is premature and not ripe for review. See, also, In re: R.P., 9th Dist. No. 23967, 2008-Ohio-2673; State v. Worthington, 3d Dist. No. 9-07-62,2008-Ohio-3222.
 {¶ 49} We note that even if this issue was ripe for review, the only modification of the statute made by S.B. 10 was to add daycare centers and preschools. The statute was not expressly made retroactive. Therefore, the Ohio Supreme Court's holding with regard to the pre-S.B. 10 amendments in Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, syllabus, is controlling. Specifically, the Hyle court held: "[b]ecause [former] R.C. 2950.031 was not expressly made retrospective, it does not apply to an offender who bought his home and committed his offense before the effective date of the statute." Thus, if appellants had purchased their homes near daycare centers, preschools, or schools prior to the effective date of S.B. 10, the new version of the statute would be inapplicable to them. *Page 20 
 {¶ 50} Appellants' sixth assignment of error is overruled.
 Retroactive Application of AWA on Plea Agreements {¶ 51} In their seventh assignment of error, appellants argue that the retroactive application of the AWA constitutes a breach of their plea agreements. They claim that the state is obligated "to impose sex offender requirements that are materially identical to those contemplated by the law in effect at the time of the plea agreement." We disagree.
 {¶ 52} We have already determined that the retroactive application of S.B. 10 is constitutional. Further, except with regard to constitutional protections against ex post facto laws, convicted sex offenders have no reasonable right to expect that their conduct will never be subject to future versions of R.C. Chapter 2950. Cook at 412. "If the rule were otherwise, the initial version of R.C. Chapter 2950 could not have been applied retroactively in the first place." King, supra, at _33. Accordingly, the state did not breach any agreement entered into with appellants.
 {¶ 53} We also note that Ohio courts have rejected similar arguments regarding H.B. 180 classifications that went into effect after an offender had entered into a plea agreement, as well as S.B. 10 classifications. See Gant, supra; State v. Desbiens, 2d Dist. No. 22489,2008-Ohio-3375; State v. Taylor, 11th Dist. No. 2002-G-2441,2003-Ohio-6963, _28; State v. Paris (June 16, 2000), 3d Dist. No. 2-2000-04; and State v. Harley (May 16, 2000), 10th Dist. No. 99AP-374;State v. *Page 21 Bodyke, 6th Dist. Nos. H-07-040, H-07-041, and H-07-042, 2008-Ohio-6387; and Randlett, supra.
 {¶ 54} Appellants' seventh assignment of error is not well-taken.
 Relief from Community Notification {¶ 55} In their eighth assignment of error, the Tier III appellants maintain that "the trial court erred by categorically denying them relief from community notification pursuant to R.C. 2950.11(F)(2)." They argue, "[s]imply put, R.C. 2950.11(F)(2) provides that an individual is not subject to community notification requirements if he or she would not have been subject to those requirements under Ohio's Megan's Law." The state maintains that "[c]ommunity notification is presumed and will apply unless the court affirmatively finds," after holding an individualized hearing and considering the R.C. 2950.11(F)(2) factors, "that the offender would not be subject to community notification under the old system."
 {¶ 56} Based upon the disparity between appellants' and the state's arguments, it is clear that R.C. 2950.11(F)(1) and (2), which set forth community-notification provisions under S.B. 10, are wrought with confusion. We wholeheartedly agree with the Second District's frustration regarding these provisions that "[t]he enactment of the `Adam Walsh Act' by the Ohio legislature, had resulted in a confusing array of very poorly worded statutory provisions that require a trial court to constantly refer to the law in effect prior to the enactment of the Adam *Page 22 
Walsh Law in order to apply the current law." In re S.R.B., 2d Dist. No. 08-CA-8, 2008-Ohio-6340, _6.
 {¶ 57} To address this issue, we must first look to the statute itself. In determining the meaning of a statute, a court must give effect to the intent of the legislature. See State ex rel. United StatesSteel Corp. v. Zaleski, 98 Ohio St.3d 395, 2003-Ohio-1630, _17;State ex rel. Van Dyke v. Pub. Emp. Retirement Bd., 99 Ohio St.3d 430,2003-Ohio-4123, _27.
A. R.C. 2950.11(F)(1) and (2)
 {¶ 58} R.C. 2950.11(F)(1) states that "[e]xcept as provided in division (F)(2) of this section, the duties to provide the notices *** apply regarding any offender *** who is in any of the following categories[.]" It then lists Tier III sex offenders and various categories of Tier III delinquent child offenders. See R.C. 2950.11(F)(1)(a)-(c).[5]
 {¶ 59} R.C. 2950.11(F)(2) provides: "[t]he notification provisions of this section do not apply to a person described in division (F)(1)(a), (b), or (c) of this section if a court finds at a hearing after considering the factors described in this division that the person would not be subject to the notification provisions of this section that were in the version of this section that existed immediately prior to the effective date of this amendment. In making the determination of whether a person would have been *Page 23 
subject to the notification provisions under prior law as described in this division, the court shall consider the following [community-notification] factors:[6]
 {¶ 60} "(a) The offender's or delinquent child's age;
 {¶ 61} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 62} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 63} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 64} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 65} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented *Page 24 
offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 66} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 67} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 68} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 69} "(j) Whether the offender or delinquent child would have been a habitual sex offender or a habitual child victim offender under the definitions of those terms set forth in section 2950.01 of the Revised Code as that section existed prior to the effective date of this amendment;
 {¶ 70} "(k) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
B. Presumption of Community Notification and Hearing Requirement
 {¶ 71} The Tier III appellants here contend that "[f]or individuals, like [them], who were originally classified under Ohio's Megan's Law, a trial court does not need to hold subsequent hearings *** to determine whether those individuals would not *Page 25 
have been subject to community notification under Ohio's Megan's Law." The state disagrees, arguing that the statute requires the court to hold individualized hearings and consider the required factors for all Tier III offenders before they can be relieved of community notification.
 {¶ 72} After reviewing R.C. 2950.11(F)(1) and (2), we conclude that it is clear that the legislature intended for Tier III sex offenders to be subject to community notification until a court determines otherwise. We find, however, that R.C. 2950.11(F)(2) is ambiguous as to whether a court must hold an evidentiary hearing and consider the community-notification factors for sex offenders who were previously classified under Ohio's Megan's Law.
 {¶ 73} R.C. 2950.11(F)(2) requires courts to look back to the former version of R.C. 2950.11 to determine if "the person would not be subject to the notification provisions *** that were in the version *** that existed immediately prior to the effective date" of S.B. 10. Under the version of R.C. 2950.11 that was in effect immediately prior to S.B. 10, only sexual predators, certain habitual sexual offenders, or offenders who had been convicted of an aggravated sexually oriented offense, were subject to community notification. See former 2950.11(F)(1). For offenders then who were not subject to community notification under the prior law, we conclude that the language plainly indicates that they will not be subject to it under the AWA. For those who were subject to it previously, they will still be subject to it under the AWA. *Page 26 
 {¶ 74} Thus, we agree with appellants that it would be nonsensical for a court to hold a hearing to determine whether they would have been
subject to community notification under the former statute, when it was already determined that they were not subject to community notification under the former statute.
 {¶ 75} If we were to adopt the state's interpretation that R.C. 2950.11(F)(2) requires the court to hold a hearing and consider the factors for all offenders who were previously classified under Megan's Law, absurd results would most certainly occur. For example, one judge could have held a H.B. 180 hearing and found that the offender should not be labeled a sexual predator (meaning that person would not be subject to community notification under the former law), and then another judge (or even the same judge for that matter) subsequently holds a R.C. 2950.11(F)(2) hearing under the AWA and, after considering essentially the exact same factors, finds that the offender should be subject to community notification. It is our view that the legislature could not have intended such paradoxical results. Thus, this court will not adopt such an interpretation. See State v. Smith,104 Ohio St.3d 106, 2004-Ohio-6238 ("[i]t is an axiom of judicial interpretation that statutes be construed to avoid unreasonable or absurd consequences");State v. Wells, 91 Ohio St.3d 32, 2001-Ohio-3.
 {¶ 76} For a Tier III offender who was not previously classified under Megan's Law and is, therefore, being classified for the first time under the AWA, we find that R.C. 2950.11(F)(2) does require the sentencing court to hold an individualized *Page 27 
hearing in every case where community notification is at issue, and consider the required factors prior to determining whether the offender should be relieved of community notification. See State v.Stockman, 6th Dist. No. L-08-1077, 2009-Ohio-266, _19 (upon initial classification of a sex offender, R.C. 2950.11(F)(2) requires sentencing court to hold a hearing and consider the factors listed therein).
 {¶ 77} For those Tier III offenders who were not subject to community notification under the former statute, we find that they are exempt from community notification under the AWA. See State v. Clay,177 Ohio App.3d 78, 2008-Ohio-2980 (First District held that if appellant had been classified as a sexually oriented offender under H.B. 180, then he would be exempt from community notification under the current R.C. 2950.11(F)(2)). In such situations, the court need not hold an evidentiary hearing or consider the R.C. 2950.11(F)(2) factors.
C. R.C. 2950.11(F)(2) Motion
 {¶ 78} Although R.C. 2950.11(F)(2) is not clear as to how the issue of relief from community notification should arise, in practice, it will most likely be the Tier III sex offender who raises the issue to the court, through a written motion or otherwise.[7] See Sewell, supra, at _4 ("Sewell filed a R.C. 2950.11(F)(2) motion *** for relief from the community-notification provisions," which the trial court granted). *Page 28 
 {¶ 79} Moreover, as in most other circumstances when a party files a motion, in either a civil or criminal case, that person must state the grounds with particularity and set forth the relief sought. See Crim. R. 47 and Civ. R. 7(B)(1).[8] Thus, when a Tier III sex offender sufficiently raises the issue of community notification, just as in other matters, the burden then will shift to the state to establish that community notification should apply, if indeed, that is what the state contends.
D. Clear and Convincing Evidence Burden
 {¶ 80} The state argues that sex offenders must establish by clear and convincing evidence that they are entitled to relief from community notification. The state does not cite to any authority regarding this claim. Contrary to the state's assertion, R.C. 2950.11(F)(2) says nothing about "clear and convincing evidence" or even that it is the sex offender's burden to prove anything.
 {¶ 81} There is a provision in R.C. 2950.11 regarding the suspension of community notification that requires an offender to prove by clear and convincing evidence that he or she "is unlikely to commit in the future a sexually oriented *Page 29 
offense." R.C. 2950.11(H)(1).[9] But a hearing to suspend community notification under R.C. 2950.11(H)(1) only arises after the sex offender has been registering for 20 years. R.C. 2950.11(H)(2).
 {¶ 82} In addition, under R.C. 2950.031 and 2950.032, if sex offenders challenged their reclassification or new registration duties under the AWA, then it was their burden to file a petition with the court within 60 days of receiving a letter from the Ohio Attorney General, request a hearing, and establish by clear and convincing evidence that the reclassification or new registration duties did not apply to them. See R.C. 2950.031(E) and 2950.032(E).[10] But the hearing provided for in these two sections, as well as the offender's burden set forth in them,was only applicable when an offender had been reclassified as a Tier I, II, or III sex offender under the AWA. These provisions do not apply to the community-notification hearing set forth in R.C. 2950.11(F)(2). We therefore disagree with the state that under *Page 30 
R.C. 2950.11, sex offenders have a "clear and convincing evidence" burden to prove that they should not be subject to community notification.
E. Ripe for Review
 {¶ 83} Finally, the state contends that the community notification issue is not ripe for review because the trial court did not hold individualized hearings for each offender. We disagree.
 {¶ 84} First, as we discussed, individualized hearings were not required for these offenders because they either were or were not subject to community notification under Megan's Law. Second, the appellants who had been reclassified as Tier III offenders sufficiently raised the issue in their petitions to the trial court that they should be relieved from community notification. Thus, the trial court erred when it summarily denied the Tier III offenders' request since it is clear that some, if not all, were not previously subject to community notification. Further, the trial court had decided all of the other issues before it. Therefore, we conclude that this issue is ripe for review.
 Failure to Appear at Hearing {¶ 85} Two appellants failed to appear at the April 23, 2008 hearing on their petitions challenging their reclassifications. The trial court dismissed their petitions with prejudice. These appellants argue that the trial court erred in doing so because it did not provide notice to them prior to dismissing their petitions. We agree. *Page 31 
 {¶ 86} Under Civ. R. 41(B)(1), a court may dismiss an action for failure to prosecute, but only after "notice to the plaintiff's counsel" is given. Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46,49. The trial court erred by not giving prior notice to counsel that it would dismiss the appellants' petition involuntarily, and with prejudice.
 {¶ 87} Accordingly, appellants' ninth assignment of error is sustained.
 {¶ 88} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The trial court is further instructed to reinstate the two petitioners it dismissed for failure to appear at the hearing.
It is ordered that appellee and appellants equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., CONCURS; JAMES J. SWEENEY, J., DISSENTS WITH SEPARATE OPINION
[1] See Appendix for list of appellants, the crime they were convicted of, their old H.B. 180 classification, and their new S.B. 10 classification.
[2] All sections of S.B. 10 did not become effective on the same date. Sections 1 to 3 (and certain other provisions) became effective on July 1, 2007. The remaining provisions (including when the tier classifications went into effect) became effective on January 1, 2008. See Am. Sub. S.B. 10, Final Bill Analysis. The AWA and S.B. 10 will be used interchangeably throughout this opinion.
[3] In Wilson, Justice Lanzinger, in a concurring in part and dissenting in part opinion (joined by Justice O'Connor and Judge Donovan), opined: "While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations are imposed upon those classified as sex offenders. All sexual predators and most habitual sex offenders are expected, for the remainder of their lives, to register their residences and their employment with local sheriffs. Moreover, this information will be accessible to all. The stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment, as the Cook court recognized. Id.,83 Ohio St.3d at 418. Therefore, I do not believe that we can continue to label these proceedings as civil in nature. These restraints on liberty are the consequences of specific criminal convictions and should be recognized as part of the punishment that is imposed as a result of the offender's actions." Wilson at ¶ 45-46.
[4] Again in Ferguson, Justice Lanzinger dissented and was joined by Justices Pfeifer and Stratton. Discussing the S.B. 5 amendments, Justice Lanzinger stated that R.C. Chapter 2950 has evolved from a remedial statute to a punitive one, that the registration requirements are not merely "collateral to a criminal conviction," and that it violates the Ex Post Facto Clause of the United States Constitution. She pointed out that "S.B. 5 applies to all sex offenders, without regard to their future dangerousness." Id. at _59. She also noted that "[t]he reporting requirements themselves are exorbitant; S.B. 5 requires sexual predators to engage in perpetual quarterly reporting to the sheriff of the county in which they reside, work, and go to school, even if their personal information has not changed. *** And meriting heaviest weight in my judgment, S.B. 5 makes no provision whatever for the possibility of rehabilitation. Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. Prior to S.B. 5, a sexual predator had the opportunity to remove that label." Id. at _60.
[5] In this case, we only address issues relating to adult sex offenders.
[6] With the exception of factor (j), these factors are identical to the "sexual predator" factors under former R.C. 2950.09(B)(3) that a trial court had to consider when determining whether an offender should be labeled a sexual predator. Factor (j) is related to a habitual sexual offender finding.
[7] We point out, though, that there is nothing in R.C. 2950.11(F)(2) to prevent a court from sua sponte holding a hearing and considering the factors to determine whether a sex offender should be relieved from community notification.
[8] Crim. R. 47 provides: "An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit."
Civ. R. 7(B)(1), which is similar, states: "An application to the court for an order shall be by motion which, unless made during a hearing or a trial, shall be made in writing. A motion, whether written or oral, shall state with particularity the grounds therefore, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."
[9] R.C. 2950.11(H)(1) provides: "Upon the motion of the offender or the prosecuting attorney *** or upon the motion of the sentencing judge or that judge's successor in office, the judge may schedule a hearing to determine whether the interests of justice would be served by suspending the community notification requirement under this section in relation to the offender. The judge may dismiss the motion without a hearing but may not issue an order suspending the community notification requirement without a hearing. At the hearing, all parties are entitled to be heard, and the judge shall consider all of the factors set forth in division (K) of this section. If, at the conclusion of the hearing, the judge finds that the offender has proven by clear and convincing evidence that the offender is unlikely to commit in the future a sexually oriented offense or a child-victim oriented offense and if the judge finds that suspending the community notification requirement is in the interests of justice, the judge may suspend the application of this section in relation to the offender. The order shall contain both of these findings."
[10] R.C. 2950.031 applied to sex offenders who had a duty to register under Megan's Law and R.C. 2950.032 applied to sex offenders who were still in prison.